## Wm. C. McGlynn vs. D. B. Scott.

Opinion filed February 19th, 1894.

### Compromise of Controversy—Consideration of Note.

A compromise of a bona fide controversy constitutes a good consideration for a promise, and such consideration cannot be destroyed by showing that the promisee in fact had no claim. But the parties must act in good faith; and therefore, if one party has no claim, and knows it, the settlement of the unfounded claim he makes will not constitute a sufficient consideration to support a promise to pay him money upon such settlement.

### Whether Claim Made—Must be Colorable.

Whether the claim made must not be at least colorable, or whether the promisee must not have reasonable ground for believing it valid, is not decided in this case.

### Evidence—Insufficient to Sustain Verdict by Direction of Court.

Evidence examined, and found insufficient to show that a compromise was intended to be made, or that the dispute between the parties was in fact finally settled.

Appeal from District Court, Dickey County; *Lauder*, J.

Action on a promissory note by William C. McGlynn against D. B. Scott. Plaintiff had judgment, and defendant appeals. Reversed.

*George W. Parks*, for appellant.

*F. S. Parker*, for respondent.

Corliss, J. The plaintiff having recovered judgment against the defendant upon a promissory note, the defendant appeals. The judgment is based upon a verdict which the court directed the jury to find in favor of the plaintiff. One of the defenses to the note relied upon in the trial court was want of consideration. It is the only defense which merits our attention. The facts of this controversy are few and simple. Plaintiff and a man named Densmore were co-partners in the business of selling farm machinery. Some time in the month of August, 1890, a Mr. Thompson purchased a separator of the plaintiff McGlynn and Densmore. According to his testimony, he was to pay $550, and no more, for

the machine laid down at Ellendale, N. D. When the machine arrived, Mr. Thompson, after assisting in removing it from the cars, went with McGlynn to the hotel in the village, and gave his promissory notes for the machine, and also a chattel mortgage to secure these notes. After this had been done, Mr. McGlynn, for the first time during the settlement, informed Mr. Thompson that he wanted Mr. Thompson to pay $41.50 freight. This Mr. Thompson refused to do, saying that he had nothing to do with the freight, and then the parties separated without further controversy about the matter. Mr. McGlynn does not appear to have urged his claim with much force after Mr. Thompson refused to recognize it. Subsequently, Scott, the defendant, who was in the employ of Thompson as foreman, came to the village, and, having hitched his team to the separator, started to take it away under instruction from Thompson. After proceeding a short distance, McGlynn overtook him, and, after getting on the machine, informed Scott that he could not take the machine until the freight was settled for; that he (Scott) was not man enough to take the machine unless the freight was settled for. Scott, evidently impressed with the truth of McGlynn's assertion of superior strength, yielded to the demand, and gave the note in suit for the alleged claim for freight, protesting, all the while, that he knew nothing about the matter; that there was nothing due from him to McGlynn; and that it was a matter for Mr. Thompson to settle. There are only two grounds on which this note can be sustained as being based upon a sufficient consideration. Scott himself owed no debt, and received no value on the execution and delivery of the note. But it was strenuously urged before us that there was a compromise of a disputed claim, and that for this compromise this note was given. In this connection, the counsel for respondent invokes a familiar rule of law. A compromise of a dispute between two persons constitutes a good consideration for the promise of either party to pay a sum of money as the result of that compromise. If there is a bona fide controversy, and the claim of the party to whom the promise to

pay is given is not utterly without foundation, but is colorable, the promise to pay will not be defeated by showing that the claim was in fact a claim which could not have been sustained. But to make out a case of compromise, in order to furnish consideration for a promise which has no other consideration, two things are necessary. There must have been a bona fide controversy, and both parties must have intended to finally settle it by the agreement they enter into. Let us assume, at first, that there was such a controversy. The next inquiry is whether the parties intended to settle it forever when the note in question was given. It is clear that McGlynn did not intend that the question whether he was entitled to freight should be settled by Scott, who knew nothing of the transaction personally, and could not be in a position to determine the question of right between McGlynn and Thompson. That McGlynn did not regard the transaction as the compromise and final adjustment of his claim for the freight is apparent from his testimony before the justice of the peace when the case was originally tried in that court. It was tried in the District Court on appeal from the judgment of a justice of the peace. In the District Court McGlynn was not sworn as a witness. Before the justice of the peace he swore that there was no consideration for the note except the freight he claimed due. He thus distinctly repudiated the idea that the note was taken in way of compromise, or for any other consideration than his claim for the freight, resting his right to recover upon it solely on the validity of that claim. Nor is it possible to believe that Scott, who had no personal knowledge of the matter, would undertake to compromise this matter,—to settle this dispute. His testimony clearly shows that a final adjustment of the controversy was furthest from his thoughts. He says that he protested to McGlynn against being compelled to give his note to get the machine, and in the same breath informed McGlynn that there was nothing due from him, and that the matter was one for Thompson, and not for himself, to settle. What he gave his note for was to get or keep possession of the machine, which McGlynn

was threatening to withhold or take from him by force.    He had no purpose deliberately to compromise this disputed claim, of the validity of which he had no personal knowledge, and McGlynn understood that Scott was not compromising this dispute.    He was content to stand on the validity of his claim for freight as a consideration for the note.    Not only does the case fail to show that the parties intended to compromise this controversy, but it also fails to show that there was, in fact, any settlement of the dispute.

This point brings us to a consideration of the foundation of the validity of a promise which is the culmination of the settlement of a controversy.    On what ground can such a promise be sustained?    Surely not on the ground that a right has been surrendered, for the rule is well settled that where there is a bona fide controversy, and the claim settled is colorable, the consideration for the promise cannot be destroyed by showing that there was in fact no validity to the claim which was made.    It would be illogical to assert that such a promise rests for its consideration upon a surrendered right, and at the same time preclude all inquiry into the question whether, as a matter of fact, a valuable right has been surrendered.    The true consideration is the settlement.    All litigation is injurious to society.    A portion of human energy is absorbed by the friction of legal strife, and so much power is thus exhausted which might otherwise be diverted into other channels.    Struggles for victory in the courts engender more or less enmity.    Time is consumed, and money is expanded, which would, in the absence of such litigation, be employed for other purposes and in other ways.    It is elementary that the courts look with the highest favor upon every honest adjustment of private differences.    "With the courts of this country, the prevention of litigation is not only a sufficient, but a highly favored, consideration."    1 Pars. Cont. p. 438.    To encourage the settlements by private agreement of controversies, and to discourage, as far as possible, a resort to the regular tribunals, the courts have resorted to this fiction; that the settlement of an honest dispute

constitutes a good consideration for a promise to pay. As a matter of fact, there may be no consideration, so far as the parties themselves are concerned, and yet the compromise will be held to be sufficient to support the promise. The person to whom the promise is made may in fact never have had a legal claim. The person who makes it may never have owed a dollar. In such a case there is, in fact, no consideration between the parties. The promisor is not benefited, and the promisee is not injured, by the compromise. The reverse is the case. The promisee is benefitted, and the promisor is injured by it. Escaping the expense of litigation would not constitute a consideration sufficient to bind the promisor. Such a doctrine would support a promise to pay in order to avoid vexation and expense from suit upon a claim which the promisee knew was utterly without foundation, and which he had presented in bad faith.

A final analysis of the question brings one to the conclusion that the only consideration for the promise in such cases is the settlement, and that this is not a consideration between the parties themselves, within the ordinary rules regulating the sufficiency of consideration to support promises, but is a fiction resorted to by the law to sustain such compromises because public policy demands their encouragement. Of course, cases may arise where other consideration to sustain the compromise may be shown; but most compromises have been upheld on no other ground than the single one of the settlement of an honest dispute, against the attempt which has been made, time and again, to show that the claim of the promisee was not valid. Said the court in *De Mars* v. *Manufacturing Co.*, (Minn.) 35 N. W. 1: "The real conderation which each party receives under a compromise is not the sacrifice of the right, but the settlement of the dispute." In *Kercheval* v. *Doty*, 31 Wis. 476, 484, Chief Justice Dixon places the binding force of compromise upon the same ground. Speaking for the court, he says: "It is not the policy of the law to stir up the embers, or to rekindle, or allow to be rekindled, the fires of past strifes and controversies, the flames of which have once been

extinguished or the burning quenched by reconciliation and compact between the parties. The law loves peace, and hates dissentions and turmoils and litigations, and all its policy and maxims are against their being revived and unnecessarily prolonged." The true consideration for the promise which springs from a settlement being the foreclosure of strife over the matters attempted to be compromised, it follows that there is no consideration for the promise when the agreement does not result in finally precluding all controversy touching the issues in dispute. The talk between McGlynn and Scott, and the giving and the acceptance of the note, settled nothing between McGlynn and Thompson. He was not present. Scott was not authorized to act for him, nor did he assume to represent Thompson in the transaction. McGlynn in no manner expressed or disclosed any purpose to release Thompson from his alleged liability for the freight paid. Nor did he in fact discharge him. Should he recover judgment against the defendant, and be unable to collect it, there would be nothing to prevent him from suing Thompson for the freight. In that event, the whole question, would be open to litigation. There would be no compromise binding on Thompson, therefore he could should that he was under no obligation to pay the freight. Again, if defendant in this action should be held liable, and should sue Thompson for reimbursement, the latter could litigate the whole question of his liability for the freight; for, defendant not having been authorized, so far as this record discloses, to settle the matter, he could hold Thompson responsible for the money paid only on establishing the fact (which Thompson might controvert) that Thompson was under obligations to pay McGlynn the freight. Even if these considerations were not controlling, yet it is clear that, under the evidence, the court should have submitted to the jury the question of good faith of McGlynn and Densmore in making this claim for freight. The only controversy which it is pretended existed between the parties is with respect to the liability of Thompson for the freight under his contract. If McGlynn and Densmore had no valid

claim for freight, and knew it, but made such claim in bad faith, and for the purpose of extorting a settlement from Scott, then the note would be without consideration, even if we shall assume that the parties intended to, and did, compromise the dispute by an agreement which was in other respects valid. It is one of the essential elements of a compromise, when sought to be used as a consideration for a promise, that it should be the compromise of an actual controversy. There must be an honest difference between the parties. Knowledge, on the part of the person who prefers a fictitious claim, that it is utterly without foundation, is fatal to the existence of a bona fide dispute. "To support a compromise there should be a doubtful, bona fide claim, about which the parties stand on an equal footing as to knowledge or ignorance of facts, and in settling it there should be no imposition or deceit. That is no compromise where one party knows he has no claim, but deceives the other party into believing he has one. * * * If one has no claim, and knows it, he is not conceding in a compromise; he is cheating. He has nothing to concede, and his only chance in the doubtful issue is that possibly his fraud may prevail." *Anthony* v. *Boyd*, (R. I.) 8 Atl. 701. In *De Mars* v. *Manufacturing Co.*, (Minn.) 35 N. W. 1, the court said: "But, on the other hand, it is equally true that to constitute a good consideration for a settlement by way of compromise there must have been an actual, bona fide difference or dispute between the parties as to their rights." In *Smith* v. *Farra*, (Or.) 28 Pac. 241, the court said: "It is not every disputed claim, however which will support a compromise, but it must be a claim honestly and in good faith asserted, concerning which the parties may bona fide, and upon reasonable grounds, disagree." No case can be found which has ever questioned this fundamental and just rule. See, on the same point, *Wahl* v. *Barnum*, 116 N. Y. 87, 22 N. E. 280; *Pitkin* v. *Noyes*, 48 N. H. 294; *White* v. *Hoyt*, 73 N. Y. 505; *Ex parte* Banner, 17 Ch. Div. 480; *Miles* v. *Estate Co.*, 32 Ch. Div. 266, 275; *Spahr* v. *Hollingshead*, 8 Blackf. 415; *Creutz* v. *Heil*, (Ky.) 12 S. W. 926; *Bellows* v. *Sowles*, 55 Vt. 39; *Kidder* v. *Blake*,

45 N. H. 530; *Cline* v. *Templeton,* 78 Ky. 550; *Everingham* v. *Meighan,* 55 Wis. 354, 13 N. W. 269; *Turner* v. *Peacock,* 13 N. C. 303; *Feeter* v. *Weber,* 78 N. Y. 334; 2 Pom. Eq. Jur. 9850; 1 Pars. Cont. pp. 438, 439; *Kercheval* v. *Doty,* 31 Wis. 476, 485; *Grandin* v. *Grandin,* (N. J. Sup.) 9 Atl. 756. The law favors the settlement of honest differences, but it will not countenance extortion and fraud. If McGlynn had no claim for freight, and knew it, his conduct was that of a man who was willing to take advantage of the ignorance of Scott of any personal knowledge as to the terms of the contract between McGlynn and Densmore on the one hand, and Thompson on the other, and of the pressing necessity of Scott to secure possession of the machine, to force from him a note without an obligation of either Scott or Thompson behind it to support it.

This brings us to the evidence. When the plaintiff introduced the note in evidence, he had made out a *prima facie* case. It is a familiar rule that a promissory note imports consideration, and our statute has extended this rule to all written instruments. Comp. Laws, § 3538, Subd. 2. Defendant then proved that there was no consideration for the note other than this alleged compromise. Now, assuming that there was, in terms, a compromise, yet defendant could show that McGlynn had no claim, and knew it. He could show that there was in fact no bona fide controversy. In ordinary cases, it may well be that there is a strong presumption as to the good faith of the promisee in making the claim. The very fact that the other party has recognized it sufficiently to settle it is a circumstance of great force, tending to show that he himself regarded it as having some foundation, and the belief of the promisor himself might well be very satisfactory evidence, *prima facie,* that the promisee deemed the claim valid. But in this case the defendant did not have to meet and overthrow so strong a presumption as to the good faith of McGlynn. Having no personal knowledge of the contract between the parties, he was not in a position to know, of his own personal knowledge, of the utter groundlessness of the claim, or the assumption

that it was groundless. Had Thompson himself voluntarily, and without duress of any kind, given the note, there would have been a very strong presumption, not only as to the good faith of McGlynn, but as to the validity of the claim for freight. But such is not this case. Was there any evidence to submit to the jury on the question of McGlynn's good faith? Was there evidence reasonably tending to show that the claim was without foundation, and that McGlynn and Densmore knew it? We think there was. On this record there is not a syllable of competent evidence to show that the contract was in fact as the plaintiff claimed it was. There is no evidence that Thompson agreed to pay the freight. Densmore was sworn as a witness, and merely testified that he did not think the contract was made with him; but he nowhere denies the positive evidence of Thompson and one Emmons that the contract was made with him. McGlynn was not sworn at all. What he testified to before the justice of the peace was proved; but this was not competent evidence as to the terms of the contract. But in this testimony before the justice of the peace he does not appear to have sworn that anything was said about the freight in his talk with Thompson. He merely claimed the freight because it was customary. Thompson admitted that nothing was said to McGlynn about freight; and from his standpoint it was unnecessary that anything should be said, as he had already made an agreement with Densmore; the other partner, under which he was to get the separator for $550, laid down at Ellendale, without freight. Both Thompson and another witness swear that this was the agreement. At the time the court directed a verdict for plaintiff it therefore appeared, by uncontradicted evidence, that McGlynn and Densmore had no valid claim for this freight money. This was a question to be taken into consideration by the jury in determining whether McGlynn honestly thought he could claim the freight money. The transaction was so recent, that, if McGlynn knew what the real contract was, he could not have forgotten the facts when he demanded of defendant the note. It is not conclusively shown that

he knew what the transaction was at the time, but there was evidence tending to show it. Before the note was given, he told Henry Rose that he had just sold Thompson a separator, and would sell him (Rose) one for the same price, and, when asked what the price was, he said $550. In the same conversation, on being informed that it was customary for agents to make such contracts so that the purchaser would have to pay the freight, he expressed surprise, and remarked that he bet Sid (meaning his partner, Densmore) had sold Thompson the separator without saying anything about the freight. The jury might well have found that he inquired of Densmore as to the fact, and ascertained that Densmore had failed to provide for the payment of freight by Thompson. That he did make such inquiry is shown by the testimony of the witness Rose, who says that McGlynn informed him in another conversation that Densmore was no longer his partner; that the only thing he had done was to sell that separator to Thompson, and made a mistake that cost him (McGlynn) $50. Another circumstance which might have satisfied the jury that McGlynn knew that Densmore had not secured an agreement for the freight is the fact that McGlynn, and not Densmore, made the settlement at the hotel when the notes and mortgage was given, and when Thompson said that he had nothing to do with the freight, McGlynn did not then further press his claim. Was Densmore kept away from this settlement because Thompson would know that Densmore knew that no claim for the freight could be made, in view of the terms of the contract? We think there was evidence from which a jury could have been justified in deducing the conclusion that not only McGlynn had no claim, but also that he knew that he had no claim, for the freight money, and simply sought to force the note from Scott as a condition of his getting or keeping possession of the machine. There are numerous decisions which hold that good faith is not sufficient; that the claim must be at least colorable. It is not necessary for us to pass upon this question. No authority can be found which dispenses with the element of good faith of the promisee in making the claim compromised.

On the argument it was urged that the surrender of the possession of the separator furnished a good consideration for the note. But we must assume, for the purposes of this appeal, that McGlynn's claim of right to hold the machine was utterly unfounded, because the question whether Thompson was bound to pay the freight was taken from the jury, although there was positive evidence that he was not bound to pay it. The jury might, on the evidence, have found that Thompson had not agreed to pay the freight. Indeed, we think the jury were bound to find so, there being no evidence to the contrary. If Thompson was under no obligation to pay the freight, McGlynn had no right to withhold from him possession of the machine, Thompson having fully settled for it. The separator was his, and, if he owed nothing for freight, the purchase price was fully settled for, and it was wrongful for McGlynn thereafter to insist on retaining possession of it. Therefore, when he yielded up possession he surrendered nothing of value on this theory of the case; and this theory the jury were justified in adopting, if, indeed, they were not bound to adopt it under the evidence. A consideration, to sustain a promise, must be something of benefit to the promisor, or of detriment the promisee. This elementary principle is recognized by our statute. Section 3530, Comp. Laws, reads as follows: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." No benefit to which he was not entitled was conferred on Scott by the delivery of the separator if, as the jury had a right to find, and perhaps were bound to find, under the evidence, the separator was fully paid for. Thompson would have a right to possession under such circumstances, and Scott was acting for him and under his instructions to get the machine, and was vested with Thompson's right to the possession of the property. Nor was it prejudicial to

the plaintiff to deliver possession to Scott if plaintiff had no lien thereon. The authorities are clear upon this proposition. In *Crosby* v. *Wood*, 6 N. Y. 369, 374, it was held that the surrender of a paper which the person surrending it had no right to retain was not such a consideration as would support an executory contract. This case is cited with approval in *Vanderbilt* v. *Schreyer*, 91 N. Y. 401. See this last case for authorities. See, also, *Morgan* v. *Hodges*, (Mich.) 50 N. W. 876; *Keith* v. *Miles*, 39 Miss. 442; *Association* v. *Wickham*, 141 U. S. 564, 577, 12 Sup. Ct. 84; *Warren* v. *Hodge*, 121 Mass. 106; *Stuber* v. *Schack*, 83 Ill. 191; *Ecker* v. *Bohn*, 45 Md. 278; *Bunge* v. *Koop*, 48 N. Y. 226; *Smith* v. *Easton*, 54 Md. 138; Appeal of Lukens, (Pa. Sup.) 22 Atl. 892; *Smith* v. *Chilton*, (Va.) 6 S. E. 142; *Worthen* v. *Thompson*, 54 Ark. 151, 15 S. W. 192. Although it should be conceded that McGlynn thought he had a valid lien on the separator, yet the surrender of such imagined lien, if there was in fact no lien, would not, of itself, constitute a good consideration for the note. One's belief is not property. It is true that belief will often be controlling when there has been a compromise; but the belief in such cases is important only because it establishes an honest controversy when there is a controversy in fact, and then the doctrine applies that a final settlement of such a controversy is of itself a sufficient consideration to support a promise, although in fact nothing has been surrendered by the promisee. The compromise is binding in such cases, not because the surrender of one's belief is the surrender of anything of value, as the surrender of value is not essential to a valid compromise, but because the law, for reasons already stated, regards the mere settlement of an honest dispute as a good consideration, and the belief of the promisee that he is right is important only because it is one of the elements essential to the establishment of such a dispute. When, therefore, there has been no compromise intended or effected, the mere belief of the promisee that he has a right is of no moment, so far as the question of consideration is concerned. It is the fact that something of value has been give up, and not the promisee's belief that he

had parted with a right, which constitutes a sufficient considera-tion. The judgment of the District Court is reversed, and a new trial ordered.

WALLIN, J., concurs.

BARTHOLOMEW, C. J.  I concur in the result, without adopting all the reasoning of the opinion.