MARK A. FRYER *vs.* ANDRO CETNOR, *et al.*

Opinion filed October 18th, 1897.

.Mortgage—Consideration—Compromise.

> Evidence in this case examined, and *held* sufficient to support the defense of total want of consideration for the notes and mortgage sued upon.  While the settlement of a good-faith difference between parties, when voluntarily made, and without any material mistake of fact, will furnish a sufficient consideration for any promise based upon such settlement, yet, where one of the parties knew or had good reason to believe that his claim had no just foundation in fact, the compromise of such claim will furnish no consideration for the promise of the other party based thereon.

Appeal from District Court, Walsh County; *Sauter,* J.

Action by Mark A. Fryer against Andro Cetnor and Sofia Cetnor.  Judgment for the defendants, and plaintiff appeals.

Affirmed.

*Phelps & Phelps,* for appellant.
*Spencer & Sinkler,* for respondents.

BARTHOLOMEW, J.   This was an action in equity to foreclose a mortgage upon real estate.  The defense was total want of consideration for the notes secured by the mortgage, and undue influence in their execution.  The judgment was in favor of defendants, and plaintiff appeals.

The case stands for trial *de novo* in this court.  We find no legal proposition in this case that merits extensive discussion.  The case turns principally upon questions of fact.  Certain matters are undisputed.  On and prior to November 1, 1892, the defendant Andro Cetnor was the owner of a certain quarter section of land in Walsh county, upon which there was a mortgage of $1,-200, in favor of one Plodzinski.  The note secured by said mortgage matured March 6, 1894.  The defendant Sofia Cetnor is the wife of her co-defendant.  On March 21, 1892, one Frank Leshnoch, a brother of Mrs. Cetnor, purchased from the plaintiff a certain tract of land in said Walsh county, for the agreed price of $4,000.  There was a mortgage on said land for $900, and the sale was

subject to such mortgage, the same being treated as a part of the purchase price. Leschnoch also made a small cash payment; and the remainder of the purchase price, being $2,923, was represented by three promisory notes executed by Leshnoch to plaintiff,— one for $823, due October 1, 1892; one for $1,000, due October 1, 1893, and one for $1,100, due October 1, 1894. These notes were secured by a second mortgage upon the land, and the first note was further secured by a chattel mortgage upon the crop to be grown upon the land in the year 1892. Leshnoch failed to pay this note at its maturity. This failure, under the terms of the mortgage, rendered the entire indebtedness due, and plaintiff threatened a foreclosure unless the matter was adjusted. Under these circumstances, plaintiff and Leshnoch, accompanied by an interpreter, went to Cetnor, who is a Polander, and speaks little or no English. Their object was to induce Cetnor to give to plaintiff notes, secured by a second mortgage upon his own farm, to the amount of Leshnoch's overdue note. After considerable hesitation on the part of Cetnor this was done. Cetnor executed five notes, dated November 1, 1892, and running from one to five years from date. Cetnor and his wife executed a second mortgage on their farm to secure these notes. The notes were also indorsed by Leshnoch, and further secured by chattel mortgage given by him upon the crops to be grown upon his farm during all the years until the maturity of the last note. The note first maturing was for the sum of $300. There is a dispute between the parties as to the real purpose in giving and taking these notes. Plaintiff claims that it was a case of novation, and that the notes were given in extinguishment of Leshnoch's overdue note for $823. Cetnor claims that they were simply collateral to such note. In our view of the case, the point is immaterial. The case must hinge upon the next transaction between the parties. In the fall of 1893, Leshnoch, without making any further payments, moved out of the state. The parties agree that thereafter plaintiff desired Cetnor to procure a deed from Leshnoch to plaintiff of the Leshnoch lands. They agree also that Cetnor procured

such deed, and delivered it to plaintiff in March, 1894. But they disagree entirely as to the contract under which such deed was procured. Cetnor testifies that after Leshnoch left the state, and about the last of October or first of November, 1893, he entered into a contract with plaintiff, by which he agreed to pay the note for $300, maturing November 1, 1893, and procure from Leshnoch a deed for the Leshnoch land free from all incumbrances except the original mortgage thereon, and that, in consideration therefor, plaintiff agreed to deliver up the four remaining notes given by defendant Cetnor, and cancel and discharge the mortgage on defendant's farm securing the same. In this Cetnor is fully corroborated by the interpreter through whom the contract was made; and Plodzinski, the holder of the first mortgage on the Cetnor farm, testifies that plaintiff told him that such was the contract. Plaintiff, on the other hand, denies that such was the contract; and in this he is supported by the presumption that arises from the giving of the notes to be hereinafter mentioned. Plaintiff testifies that he simply agreed to give defendant five dollars if he would procure such deed, and that this agreement was made directly with Cetnor without the aid of an interpreter. That the $300 note was paid, and the deed procured, are undisputed facts. The trial court found the contract to be as claimed by defendant and his witnesses. We are entirely satisfied that this conclusion of the trial court was correct. Not only is it supported by the decided preponderance of the evidence, but the probabilities are all in that direction. By such an arrangement, plaintiff recovered back the land in exactly the same situation as when he transferred it. The interest on the first mortgage had been paid by Leshnoch or Cetnor. There was no added burden. Plaintiff also received the $300 paid in the fall of 1893, and the cash payment made by Leshnoch at the time of the purchase, for the use of the land during the years of 1892 and 1893. Such an arrangement would seem to be just and fair to all parties. Leshnoch, for the purpose of relieving his brother-in-law from an amount of indebtedness incurred solely for Leshnoch's benefit,

would naturally be willing to give the deed, and thus yield possession and title to plaintiff a year earlier than they could be obtained by foreclosure. Plaintiff's version of the contract goes upon the theory that Leshnoch would, without any consideration whatever, surrender to plaintiff a right of possession confessedly worth several hundred dollars, and at the same time leave his brother-in-law bound to pay to plaintiff a large indebtedness incurred solely for Leshnoch's benefit. It is entirely clear to us that the contract was as defendant claims.

It is urged here, and authorities cited to show, that the payment of a portion of a liquidated obligation is no consideration for the cancellation of the remainder. But that is not this case. In addition to the partial payment, a certain act was to be performed, and the parties might place such valuation upon the performance of that act as they saw proper. A point is made also as to the manner in which the $300 note was paid. It is claimed that it was not paid by Cetnor. This is technically true. It was paid from the proceeds of certain crops that Leshnoch left on his farm. We are satisfied that this was all that plaintiff required or expected. It never occurred to him to require Cetnor to pay the note with his own money, and permit him (plaintiff) to hold the Leshnoch crop to apply on indebtedness not yet due. This is clear from the fact that plaintiff himself hauled or caused to be hauled nearly all the grain that went to pay the note; and, when a sufficient amount of grain had been delivered to pay the note, plaintiff turned it over to defendant with the statement that it had been paid. It follows, then, in our view, that, when said note was paid and the deed delivered, all of defendant's indebtedness to plaintiff was extinguished, and it at once became plaintiff's duty to cancel and satisfy the mortgage given to secure the same. This he failed to do. In the spring of 1894, the indebtedness secured by the first mortgage on defendant's farm became due, and the holder insisted upon payment or foreclosure. Defendant could not pay it unless he could procure the money by a loan on his land. This he arranged to do, but could no

consummate it by reason of plaintiff's unsatisfied mortgage on the records. Finally an arrangement was made by which defendant gave plaintiff a new mortgage for $800, and plaintiff satisfied his old mortgage, and withheld the new from record until the loan to pay off the Plodzinski mortgage was consummated and the mortgage securing the same placed of record. Then plaintiff put his new mortgage for $800 on record. It was to foreclose this latter mortgage that this action was brought. As we have seen, there was no consideration whatever for the notes secured by such mortgage. But plaintiff contends that such notes were the result of a compromise of a *bona fide* difference between the parties, and the law so far favors such adjustments that it will recognize the settlement of the dispute as a sufficient consideration to support any promise made by one party to the other, even where there was no enforceable claim against the promisor in favor of the promisee. This is undoubtedly correct where the dispute is *bona fide*, and the parties stand on equal footing and the promise is voluntarily made. But, before the settlement or compromise of a disputed matter can of itself constitute a consideration for a promise, it must clearly appear that the dispute was *bona fide*. If a party knows or ought to know that his claim is unfounded, then its settlement will furnish no consideration for a promise made by the other party. *Kercheval* v. *Doty*, 31 Wis. 479; *Pitkin* v. *Noyes*, 48 N. H. 294; *McKinley* v. *Watkins*, 13 Ill. 140; *Headley* v. *Hackley*, 50 Mich. 43, 14 N. W. Rep. 693; *Ormsbee* v. *Howe*, 54 Vt. 182; *Feeter* v. *Weber*, 78 N. Y. 334; *McGlynn* v. *Scott*, 4 N. D. 18, 58 N. W. Rep. 460. If the facts in this case are as we have stated,—and we have no doubt as to the correctness of our conclusions,—it is not possible to conceive that plaintiff believed that he had any just claim upon defendants at the time the notes and mortgage in suit were executed. It follows, then, that the notes were not based upon any property consideration, or upon any consideration growing out of the adjustment of a good-faith dispute.

The judgment and decree of the trial court must be in all things affirmed. All concur.