Robert KELLER, Plaintiff and Appellee,

v.

John HUMMEL, Jr., Defendant and Appellant.

Civ. No. 10350.

Supreme Court of North Dakota.

May 26, 1983.

Freed, Dynes, Reichert & Buresh, Dickinson, for plaintiff and appellee; argued by George T. Dynes, Dickinson.

Vogel Law Firm, Mandan, for defendant and appellant; argued by Jos. A. Vogel, Mandan.

PEDERSON, Justice.

John Hummel, Jr. appeals from a partial summary judgment interpreting a contract for the sale of a quonset building. We reverse and remand for trial.

In April 1979 the parties entered into a written agreement whereby Hummel agreed to sell a quonset-type building to Robert Keller.[1] The contract provided for a purchase price of $3,500, with $2,000 to be paid April 25, 1979, and the balance of $1,500 to be paid before the structure was moved or by April 15, 1980, whichever came first. The terms of the contract set the rate of interest for the unpaid amount at 5%. The contract also provided that Keller could use the quonset for storage of grain until the time of its removal from the premises and that the building could be removed anytime, but no later than April 15, 1982.

Keller paid the $2,000 down payment and subsequently stored approximately 10,000 bushels of wheat from his 1979 crop in the quonset. It is not disputed that Keller failed to pay the balance due on the contract by April 15, 1980. Hummel contends that Keller informed him that he no longer had any use for the building and that, therefore, Hummel was justified in treating the contract as cancelled. Keller disputes Hummel's contention and says that he informed Hummel, shortly after he had

---

1. The "Quonset Sale Agreement" provided as follows:

"This agreement made and entered into this 25th day of April, 1979, by and between John Hummel, Jr. of Mott, North Dakota, party of the first part, and Robert Keller, of Mott, North Dakota, party of the second part.

"Party of the first part, agrees to sell as is to Robert Keller, party of the second part a 36' × 96' quonset type building of wood construction. The structure is on the SE ¼ of 18–137–92, and is to be moved anytime, but no later than April 15, 1982. The responsibility and cost of moving the structure are that of the purchaser, and will be in addition to the purchase price. Purchase price is the sum of $3500.00, two thousand dollars ($2000.00) paid down on April 25, 1979, and a balance of $1500.00 to be paid before the structure is moved or by April 15, 1980, whichever comes first. Rate of interest for the unpaid amount will be 5%.

"It is also understood that the cement slab and stanchions not be damaged in the process of removing the structure. Purchaser may use the structure for the storage of grain at its present location until such time when it must be removed from the premises."

missed payment on April 15, 1980, that he intended to remove and sell his grain in the summer of 1980 and use the proceeds to pay the balance due on the contract, but that Hummel denied him access to the quonset.

In April 1982, following unsuccessful attempts to settle the dispute, Keller commenced this action seeking an injunction to restrain Hummel from interfering with the removal of the grain from the quonset and for compensatory and punitive damages. Hummel counterclaimed, alleging cancellation of contract and seeking an equitable storage lien on Keller's wheat from April 15, 1980. In April 1982 Keller tendered to Hummel the sum of $1,725 which represented the balance due on the contract, plus interest at the contract rate of 5%. Hummel refused to accept payment and the money was then deposited in the district court where it remains pending the final outcome of this action.

■ The district court entered a restraining order prohibiting Hummel from interfering with the removal of Keller's grain. Keller's subsequent motion for partial summary judgment was granted.[2] The district

court interpreted the contract and determined ownership of the quonset in favor of Keller, leaving for trial the issue of damages.[3] It is from this partial summary judgment that Hummel appeals.[4]

Hummel states the issues on appeal as follows:

1. Did the plaintiff breach the contract, thus entitling defendant to cancel the same pursuant to Chapter 9-09, NDCC?

2. Is the defendant entitled to a storage lien on the grain stored by the plaintiff in the quonset after April 15, 1980, the date of breach, until its removal in June 1982?

3. Is summary judgment appropriate in the instant case?

■ Summary judgment will be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. Rule 56(c), NDRCivP. Summary judgment is not appropriate if the moving party is not entitled to judgment as a matter of law, nor is

---

2. Partial summary judgment is provided for by Rule 56(d), NDRCivP.

3. The partial summary judgment decreed as follows:

"1. That the written agreement between the parties, dated April 25, 1979, is clear and unambiguous and is properly construed and enforced by the Court.

"2. Under said Agreement of April 25, 1979, the Plaintiff is entitled to have and remove the quonset building from the premises owned by the Defendant, having already tendered into Court for the Defendant the sum of $1,725.00, which is the full amount owing under the Contract, plus interest as provided in the written contract.

"3. There is no genuine issue as to any material fact concerning the ownership of the quonset building, concerning which the Plaintiff's claim is herewith in all respects granted, and the Defendant's claim is herewith denied, as a matter of law.

"4. Under said written agreement between the parties, the Plaintiff was entitled to store his wheat in the building without cost to him, other than the payment of the purchase price for the building, and therefore the Defendant has no cause of action and is not entitled to any claim of compensation for the storage of the Plaintiff's wheat in the build-

ing, which is the subject of the April 25, 1979, agreement.

"5. The Defendant had no right to cancel, or otherwise terminate, the April 25, 1979, agreement, or any of its various provisions.

"6. In reaching its determination on the issues herein decided, the Court has determined certain of the issues between the parties, leaving several other issues undecided. The remaining issues, including all of the claims of damage made by the Plaintiff, remain for trial to the jury.

"7. The Court has expressly found that there is no just reason for delay and that this Partial Summary Judgment is to be a final judgment on the matters herein determined, notwithstanding the fact that fewer than all of the claims between the parties are being determined by this Partial Summary Judgment."

4. In an action involving multiple claims, a partial summary judgment entered pursuant to Rule 54(b), NDRCivP on one or more but fewer than all the claims upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment is a final judgment for the purposes of appeal.

summary judgment appropriate if it appears from the record that there is an unresolved issue of material fact or if reasonable differences of opinion exist as to the inference to be drawn from undisputed facts. *Hadland v. Schroeder,* 326 N.W.2d 709 (N.D.1982); *Benson Cty. Co-op., Etc. v. Central Livestock,* 300 N.W.2d 236 (N.D. 1980).

Summary judgment is not appropriate in the instant case because there are genuine issues as to a number of material facts. The material facts involve such questions as whether time of performance of the contract is of the essence and, if time is not of the essence, whether Keller tendered payment within a reasonable time after the date specified in the contract.

In *Sorlie v. Ness,* 323 N.W.2d 841, 844 (N.D.1982) this court stated:

"The construction of a written contract to determine its legal effect is a question of law for the court to decide. *Metcalf v. Security International Ins. Co.,* 261 N.W.2d 795 (N.D.1978). The determination of whether or not a contract is ambiguous is also a question of law for the court to decide. *Schulz v. Hauck,* 312 N.W.2d 360 (N.D.1981); *Grove v. Charbonneau Buick-Pontiac, Inc.,* 240 N.W.2d 853 (N.D.1976). Pursuant to Section 9–07–04, N.D.C.C., the intention of the parties under a written contract is to be ascertained from the writing alone if possible. If the parties' intentions can be ascertained from the writing alone, without reference to extrinsic evidence, then the interpretation of the contract is entirely a question of law, and this court will independently examine and construe the contract to determine whether or not the district court erred in its interpretation of it. *Metcalf v. Security International Ins. Co., supra; Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894 (N.D.1978). But, if the parties' intentions cannot be determined from the writing alone and reference must be made to extrinsic evidence, then those questions in regard to which extrinsic evidence is adduced are questions of fact to be deter-

mined by the trier of fact. *Farmers Elevator Company v. David,* 234 N.W.2d 26 (N.D.1975); *Stetson v. Investors Oil, Inc.,* 140 N.W.2d 349 (N.D.1966)."

See also *Ray Co., Inc. v. Johnson,* 325 N.W.2d 250 (N.D.1982).

Under the circumstances of this case it was error for the court to conclude, as a matter of law, that the contract was not ambiguous. The parties' intentions as to whether or not time was of the essence cannot be determined from the writing alone. Unless the intent that time is of the essence is manifest from the face of the contract, it is a question to be determined by the trier of fact and summary judgment should not be granted if reasonable men could differ on the issue. *Farmers Elevator Company v. David, supra.* Although the quonset sale agreement provided that the balance of the purchase price was to be paid by April 15, 1980, it did not contain the words "time is of the essence," and some of the words used and the conduct of the parties do not support an intent that time was of the essence. If time was of the essence, Keller's failure to pay the balance due on time discharged Hummel from further obligation under the contract, and therefore Keller would not be entitled to summary judgment on the question of ownership of the quonset. *E.E.E., Inc. v. Hanson,* 318 N.W.2d 101 (N.D.1982). The trial court should have permitted the case to go to trial so that extrinsic evidence could have been received and weighed by the jury.

Furthermore, if it is determined that time is not of the essence, did Keller tender payment within a reasonable time after the specified date? Keller admittedly did not make the final payment by the date specified in the contract. Where time is not of the essence, a reasonable delay in performance does not constitute a breach of contract; however, an unreasonable delay constitutes a breach and justifies the remedy of cancellation. *Tower City Grain Co. v. Richman,* 262 N.W.2d 22 (N.D.1978). What constitutes a reasonable time within the facts of a given case is a question of fact. *Mott Equity Elevator v. Svihovec,* 236

N.W.2d 900 (N.D.1975). Whether or not Keller tendered performance within a reasonable time under the circumstances is a question of fact upon which reasonable men could differ, and therefore is not an appropriate issue for summary judgment.

■ For the reasons stated, the summary judgment is reversed and the case is remanded for trial on the merits. Because the summary judgment is reversed, the issues raised by the parties will be addressed at trial and, accordingly, it becomes unnecessary for us to discuss those issues. Ordinarily, however, a mere dispute regarding an incidental portion of a contract which involves only the payment of money does not justify a rescission of contract. *Langer v. Lemke,* 78 N.D. 383, 49 N.W.2d 641 (1951). See also 17 Am.Jur.2d Contracts §§ 441, 503 and 504.

Reversed and remanded.

ERICKSTAD, C.J., and SAND, VANDE WALLE, and PAULSON, JJ., concur.