# FIRST NATIONAL BANK OF NOME v. GERMAN AMERICAN INSURANCE COMPANY.

### (38 L.R.A.(N.S.) 213, 134 N. W. 873.)

**Fire insurance — stipulation against other insurance — agent acting for both parties.**

1. Action on two fire insurance policies issued by defendant company covering plaintiff's banking building and its contents. Such policies were issued by one T., who was both plaintiff's cashier, and defendant's local agent. These policies are in the standard form, containing, among other things, the usual stipulations to the effect that the policies shall be void if additional insurance is effected on the property, without consent thereto being indorsed on the policy, or "if the hazard be increased by any means within the control or knowledge of the insured."

Concededly, T., as plaintiff's cashier, effected other and additional insurance on the bank building in another insurance company, and no indorsement of consent thereto was ever made on the policies in suit, and defendant had no actual knowledge thereof until after the property was consumed by fire.

*Held*, that such stipulations are valid, and hence such other insurance rendered the policies void, in the absence of a waiver thereof by defendant, or in the absence of facts estopping it from urging such defense.

**Imputing notice of insurance agent to company — where agent also acts for insured.**

2. The knowledge of T. of facts avoiding such policies will not, for reasons stated in the opinion, be imputed to his principal, the defendant. Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837, distinguished.

**Imputing agent's notice to principal — where interests are conflicting.**

3. Where an agent's duty to his principal is opposed to or conflicts with his own interest or that of another person for whom he acts, the law will not impute his knowledge gained in such transaction to such principal.

---

Note.—The question of the effect of the knowledge of an insurance agent acting in two capacities to charge the company with notice is treated in a note in 3 L.R.A. (N.S.) 444, appended to the case of Foreman v. German Alliance Ins. Co. 104 Va. 694, 113 Am. St. Rep. 1071, 52 S. E. 337, holding that to bind an insurance company to a waiver because of knowledge of a particular state of facts received by its agent while acting as agent of a building association, such knowledge must be shown to have been present in his mind when performing the act which is alleged to have constituted the waiver. And this seems to be the general rule that is applied in determining whether knowledge of an agent acting in two capacities, or acquired outside the scope of his duties as agent, can be imputed to the principal.

**Fire insurance — stipulation against other insurance — waiver.**

   4. Knowledge of such additional insurance acquired by defendant's adjuster after the fire did not operate as a waiver of defendant's right to urge the invalidity of such policies.

**Fire insurance — diligence in saving property.**

   5. *Held,* that no recovery on said policies for the personal property loss can be had for the further reason that the evidence discloses that no proper diligence on plaintiff's part was exercised to save the same.


Opinion filed December 11, 1911.   On rehearing February 23, 1912.


   Appeal by defendant from a judgment of the District Court for Barnes County, *E. T. Burke,* J., denying his motion for judgment *non obstante veredicto,* or for new trial, in an action to recover on two fire insurance policies.

   Reversed.

   *Barnett & Richardson,* for appellant.

   Defendant not liable when property of plaintiff destroyed by order of civil authority.   Lycoming F. Ins. Co. v. Schwenck, 95 Pa. 89, 40 Am. Rep. 629; Barton v. Home Ins. Co. 42 Mo. 156, 97 Am. Dec. 329; Dupin v. Mutual Ins. Co. 5 La. Ann. 482; Strauss v. Imperial F. Ins. Co. 16 Mo. App. 555; Germania F. Ins. Co. v. Deckard, 3 Ind. App. 361, 28 N. E. 868; Boon v. Ætna F. Ins. Co. 95 U. S. 117, 24 L. ed. 395; Spring Garden Ins. Co. v. Imperial Tobacco Co. 132 Ky. 7, 20 L.R.A.(N.S.) 277, 116 S. W. 234; see also note to 20 L.R.A.(N.S.) 277; New York v. Lord, 17 Wend. 258; Taylor v. Plymouth, 8 Met. 462; Keller v. Corpus Christi, 50 Tex. 614, 32 Am. Rep. 613; Hale v. Lawrence, 21 N. J. L. 714, 47 Am. Dec. 190; Struve v. Droge, 62 How. Pr. 233; Baumgartner v. Hasty, 100 Ind. 575, 50 Am. Rep. 830; 28 Cyc. 769; Chicago League Ball Club v. Chicago, 77 Ill. App. 124; McKibbin v. Ft. Smith, 35 Ark. 352; Keller v. Corpus Christi, 50 Tex. 614, 32 Am. Rep. 613; Fields v. Stokley, 99 Pa. 306, 44 Am. Rep. 109; City F. Ins. Co. v. Corlies, 21 Wend. 367, 34 Am. Dec. 258.

   Insured cannot recover for a loss occasioned by his own wrongful act, or by any agent for whose conduct he is responsible.   Williams v. New England Ins. Co. Fed. Cas. No. 17,731; Cyc. Names v. Dwell-

ing-House Ins. Co. 95 Iowa, 642, 64 N. W. 628; Fleisch v. Insurance Co. of N. A. 58 Mo. App. 596; Emerado Farmers' Elevator Co. v. Farmers' Bank, 20 N. D. 270, 29 L.R.A.(N.S.) 567, 127 N. W. 522; Cobb v. Simon, 119 Wis. 597, 97 N. W. 276; Robinson v. Superior Rapid Transit R. Co. 94 Wis. 345, 34 L.R.A. 205, 59 Am. St. Rep. 896, 68 N. W. 961. See note to 62 Am. Dec. 387.

Defendant cannot be held to have either consented to or waived the indorsement in writing upon the policies, of the agreement permitting additional insurance. Couch v. City F. Ins. Co. 38 Conn. 181, 9 Am. Rep. 375; Hughes v. Insurance Co. of N. A. 40 Neb. 626, 59 N. W. 112.

Knowledge of an agent of additional insurance procured by him upon his own property, or property in which he had an interest, cannot be imputed to the defendant company. Traders' Ins. Co. v. Letcher, 143 Ala. 400, 39 So. 271; Queen Ins. Co. v. May, — Tex. App. —, 35 S. W. 829; Phœnix Ins. Co. v. Fleming, 65 Ark. 54, 39 L.R.A. 789; Gregg v. Baldwin, 9 N. D. 515; Union Nat. Bank v. German Ins. Co. 18 C. C. A. 203, 34 U. S. App. 397, 71 Fed. 473; 31 Cyc. 1587, 1588; United Firemen's Ins. Co. v. Thomas, 47 L.R.A. 450, 27 C. C. A. 42, 53 U. S. App. 517, 82 Fed. 406, 34 C. C. A. 240, 92 Fed. 127; Ætna Indemnity Co. v. Schroeder, 12 N. D. 110, 95 N. W. 436.

*Page & Englert*, for respondent.

In the absence of fraud or design on the part of the insured in destroying the property a fire insurance company is not relieved from liability. Karow v. Continental Ins. Co. 57 Wis. 56, 46 Am. Rep. 17, 15 N. W. 27; Pool v. Milwaukee Mechanics' Ins. Co. 91 Wis. 530, 65 N. W. 54; Anger v. Western Assur. Co. 10 S. D. 82, 71 N. W. 761; Bowers v. State, 24 Tex. App. 542, 7 S. W. 247; Ferguson v. State, 36 Tex. Crim. Rep. 60, 35 S. W. 369; Huff v. Chicago, I. & L. R. Co. 24 Ind. App. 492, 79 Am. St. Rep. 274, 56 N. E. 932; Horton v. Equitable Life Assur. Soc. 35 Misc. 495, 71 N. Y. Supp. 1060.

Defendant is not in a position to urge a forfeiture of the policies. Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837; Lawyer v. Globe Mut. Ins. Co. 25 S. D. 549, 127 N. W. 615.

FISK, J. Plaintiff seeks to recover on two insurance policies issued by defendant company in the fall of 1908. Both policies covered plaintiff's banking building in the village of Nome, this state, and one of such policies also covered the furniture and fixtures while contained in such bank building. The first policy is for $1,000 on the building, and the other is for $500 on the building and $800 on furniture and fixtures. Both of these policies were carried on this property for several years, being renewed from year to year. One Torbenson, during all the times mentioned, was cashier of plaintiff bank and also the local agent at Nome for defendant company, and in the latter capacity he issued the policies in suit. Each of such policies are in the standard form insuring plaintiff against all direct loss or damage by fire in the amounts mentioned, and containing, among other things, the following stipulations and conditions: "No officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached. . . . This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured, touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered, in whole or in part, by this policy; or if the hazard be increased by any means within the control or knowledge of the insured.

"This company shall not be liable for loss caused directly or indirectly by . . . order of any civil authority . . . or by neglect of the

insured to use all reasonable means to save and preserve the property at and after a fire, or when the property is endangered by fire in neighboring premises."

Sometime prior to the fire hereinafter mentioned, the exact date being immaterial, Torbenson, as cashier of plaintiff, applied for and procured to be issued to it by the Home Insurance Company a policy for $500, covering said building, which policy was in force at the date of the fire. It is conceded that consent to such additional insurance was not indorsed on either of the policies issued by defendant, and no notice was given to the defendant company of such other insurance, unless the notice and knowledge thereof on Torbenson's part can be imputed to it, which we will presently notice.

On the night of June 5, 1909, a fire was discovered in the rear of a general merchandise store about six lots east of the bank building and on the same side of the block. The bank building stood in the southwest corner of the block, and between it and the place where such fire originated there were several buildings, all of which were consumed by such fire. Nome, being a small village, was not equipped with modern fire apparatus, and, shortly after the fire started, a consultation was had between Torbenson, the sole representative of the bank present at the time, and the president of the board of village trustees and two of such trustees, together with several other citizens, and it was finally agreed that in order to prevent the fire from reaching what is known as the Hanson store, which was a large establishment, heavily insured, and situated east and just across the street from the bank building, in the corner of the next block, they concluded it necessary or advisable to destroy the bank building by burning the same, which they proceeded to do by saturating the same with kerosene oil and lighting it. While the record discloses that there was plenty of time before burning such building to remove the furniture contained therein, no effort appears to have been put forth to this end, and practically all of it was burned with the building.

At the conclusion of plaintiff's testimony and also at the conclusion of all of the evidence, defendant's counsel moved for a directed verdict upon the grounds:

"First. That it appears affirmatively that there was other insurance on this building, notice thereof not being given to the defendant.

"Second.   That it appears affirmatively that this building was destroyed in the presence of and with the tacit consent of the cashier of the plaintiff, who was then present.

"Third.   That it appears affirmatively from the evidence herein that there was no effort made on behalf of the plaintiff, or its officers, to protect the property at the time of the fire or thereafter.   It further appears from the testimony of the plaintiff that there was no effort made to save the personal property therein.

"Fourth.   It affirmatively appears that there was false swearing in the matter of making final proof of this loss."

Such motion was denied and the cause submitted to the jury, who returned a verdict in plaintiff's favor of $2,099.40.   Thereafter defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial, which motion was denied and judgment entered on the verdict, and this appeal is from the order and judgment aforesaid.

In this court appellant assigns numerous errors, but we find it unnecessary to set them out in full or to notice more than two of appellant's contentions, which are, that the policies were void at the time of the fire on account of such additional insurance procured by plaintiff without defendant's knowledge or consent, either express or implied, and that plaintiff, through its cashier, neglected to use reasonable means to save and preserve the personal property.

We are agreed that these contentions must be upheld and the trial court directed to reverse its judgment and enter a judgment in appellant's favor.   Our reasons for reaching this conclusion are briefly as follows:   Such additional insurance was in direct contravention of the stipulations in the policies in suit which, in effect, provide that consent thereto must be indorsed on such policies, and also "if the hazard be increased by any means within the control or knowledge of the insured" the entire policy shall be void.   The uncontroverted showing is that with such additional insurance the bank building was overinsured and the hazard was thus increased by means within the control and knowledge of the insured in direct contravention of the provisions of the policies, and unless defendant company has waived the benefit of such stipulations or has done something creating an estoppel on its part to urge such defenses, the recovery cannot be sustained, and this, regardless of Torbenson's alleged good faith in procuring such additional insurance.

We take it to be the universal holding that such conditions or stipulations are valid and binding on the insured, unless waived by the insurer or unless the latter, by its conduct, becomes estopped to urge a breach there as a defense to a recovery under the policy. Wilcox v. Continental Ins. Co. 85 Wis. 193, 55 N. W. 188; A. M. Todd Co. v. Farmers' Mut. F. Ins. Co. 137 Mich. 188, 100 N. W. 442.; Sun Fire Office v. Clark, 53 Ohio St. 414, 38 L.R.A. 563, 42 N. E. 248, and cases cited. Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837, and cases cited. Lawver v. Globe Ins. Co. 25 S. D. 549, 127 N. W. 615; Hughes v. Insurance Co. of N. A. 40 Neb. 626, 59 N. W. 112.

The fact that defendant's adjuster acquired knowledge after the fire of such additional insurance, and made no complaint by reason thereof, does not, under the provisions of the policy, operate as a waiver of defendant's right to urge such defense. The fact that the jury found that defendant company had knowledge of such additional insurance is of no force whatever, as there is not a scintilla of evidence in the record upon which such finding can be based.

Respondent's counsel rely upon the cases of Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837, and Lawver v. Globe Ins. Co. 25 S. D. 549, 127 N. W. 615, in support of their contention that defendant is not in a position to urge a forfeiture of the policies, but we do not deem these cases in point. In the Leisen Case we held, following the weight of authority, that where a fire insurance company, with full knowledge of facts which, under the stipulations contained in the application or policy, render such policy void at its inception, issues and delivers the same and collects and retains the premium therefor, it will be deemed in law to have impliedly waived such forfeiture, and that restrictions in a policy, limiting the power of agents to waive conditions except in a certain manner, cannot be held to apply to those conditions which relate to the inception of the contract, where the agent, with full knowledge of the facts, issues the policy and collects the premium, and the insured has acted in good faith. That case, however, may be clearly differentiated from the case at bar. There, the agent of the insurance company was in no way connected with the insured and had no direct or indirect interest in the property insured. Hence, the well-settled rule that the knowledge of the agent

23 N. D.—10.

of facts invalidating the policy at its inception will be imputed to his principal, the insurance company, has no application. In the case at bar the agent Torbenson was also cashier of plaintiff bank and owned about one quarter of its capital stock. In effecting such insurance he acted in a dual capacity, and although defendant, as plaintiff contends, may, from the evidence, be presumed to have had knowledge of this fact, and cannot, therefore, take advantage thereof, it by no means follows that Torbenson's knowledge as to such additional insurance taken out in another company, should, in law, be imputed to this defendant. We are clear that it should not, for there can be no presumption that Torbenson would convey information to defendant which would be prejudicial or detrimental to the interests of the bank. This is well settled by the authorities.

Ætna Indemnity Co. v. Schroeder, 12 N. D. 110, 95 N. W. 436, and authorities cited. Traders' Ins. Co. v. Letcher, 143 Ala. 400, 39 So. 271; Queen Ins. Co. v. May, — Tex. Civ. App. —, 35 S. W. 829; Phœnix Ins. Co. v. Flemming, 65 Ark. 54, 39 L.R.A. 789, 67 Am. St. Rep. 900, 44 S. W. 464; 31 Cyc. 1587–1595, Mechem, Agency, § 721; Exchange Bank v. Nebraska Underwriters Ins. Co. 84 Neb. 110, 133 Am. St. Rep. 614, 120 N. W. 1010.

In the last case cited the facts are very similar to those in the case at bar, and we quote therefrom as follows:

"It is conceded that the defendant company had no actual notice of the bill of sale made by Hall & Hartley to the bank until after the fire, and the principal dispute arises upon the effect that should be given to the knowledge of Lamborn, the agent of the defendant company, and who, at the same time, was the assistant cashier of the bank. The plaintiff asserts that knowledge of the agent, who, it is conceded, was present when the bill of sale was made, and had knowledge of all the facts, is notice to the defendant company; while the defendant asserts with equal vigor that knowledge of Lamborn cannot be imputed to the company, as his interest as an employee and officer of the bank was adverse to the interest of the defendant company."

After quoting certain authorities as to the general rule, the court says: "Like most other legal rules, this one has its exceptions, and one of the exceptions is that a corporation is not chargeable with the knowledge, nor bound by the acts of one of its officers in a matter in which

he acts in behalf of his own interest, and deals with the corporation as a private individual, and in no way representing it in the transaction. . . . We think it may be regarded as well established that where an agent's duty to his principal is opposed to, or even remotely conflicts with, his own interest, or the interest of another party for whom he acts, the law will not permit him to act, nor will it hold his acts or his knowledge gained in such transaction obligatory upon his principal. That the execution of the bill of sale rendered void policies conditioned as are those in question was held in Farmers' & M. Ins. Co. v. Jensen, 56 Neb. 285, 44 L.R.A. 861, 76 N. W. 577, 78 N. W. 1054, and in Home F. Ins. Co. v. Collins, 61 Neb. 198, 85 N. W. 54. . . . The bank must be charged with knowledge of the conditions of the policies prohibiting a transfer of title of the property insured. It knew that in accepting the bill of sale the policies were made void, unless the company was notified and consented thereto. It was the duty of the bank to inform the company that it was about to take this security and to obtain its assent. . . . A like duty was cast upon Lamborn, the agent of the company; but it appears that the adverse interest cast upon him as an officer of the bank kept him silent, and that same adverse interest creates an exception in the application of the general rule of law imputing knowledge and notice of the agent to his principal."

There being no contention that the defendant had actual notice of such additional insurance and there being nothing to impute such notice or knowledge to it, it necessarily follows that it is not estopped to urge such defense under the rule announced in Leisen v. St. Paul F. & M. Ins. Co. and Lawver v. Globe Ins. Co. supra.

As to the personal property destroyed we think it clearly appears from the uncontroverted evidence that no effort was made to save the same, and that there was ample time and opportunity to do so. It would be useless to review the testimony bearing upon this point. Sufficient to say that after reading the record we are forced to the conclusion that no indemnity could be had for the loss of such personal property, even though the policies were not rendered void by reason of such additional insurance. The finding of the jury in plaintiff's favor on this issue is entitled to no weight in the light of the undisputed facts disclosed by the record.

The trial court should have granted defendant's motion and directed

a verdict in its favor. For its failure to do so the judgment must be reversed and that court directed to enter a judgment dismissing the action, and it is so ordered.

Mr. Justice Burke, being disqualified, did not participate. Honorable S. L. Nuchols, of the twelfth judicial district, sitting in his place by request.

(Filed February 23, 1912.)

Fisk, J. After the above opinion was filed a rehearing was granted upon the question of plaintiff's right to recover for the personal property loss. In their petition for rehearing as well as in their brief on such rehearing, counsel for plaintiff vigorously challenge the correctness of that portion of the opinion which denies the plaintiff's right to recover for the loss on the personal property. We have carefully reconsidered this phase of the appeal, and are agreed that the conclusion arrived at in the first opinion is sound and must be accordingly adhered to. We deem it advisable, however, to treat this question a little more elaborately than was done in the first opinion. The writer, in preparing such opinion, labored under the belief that the policy, Exhibit D, covering as it does both the bank building and the furniture and fixtures while contained therein, for a lump consideration as premium, although the amount of insurance on each class was separately stated, was an indivisible contract. Hence, under its provisions, anything which rendered the policy void as to the building would also render it void in its entirety. In the absence of the special statute in this state, which we discovered since filing the former opinion, and which we will presently notice, this conclusion is, we think, correct and in harmony with the weight of modern authority, which, as we understand it, is to the effect that such a policy is indivisible, although the cases on this question are in hopeless conflict.

See 19 Cyc. 711, 674 & 707, and cases cited; also 2 Cooley, Briefs on Insurance, pp. 1894–1926, where the authorities are collated and exhaustively discussed; Benham v. Farmers' Mut. F. Ins. Co. 165 Mich. 406, — L.R.A.(N.S.) —, 131 N. W. 87, Ann. Cas. 1912 C, 983; St. Landry Wholesale Mercantile Co. v. New Hampshire F. Ins. Co. 114 La. 146, 38 So. 87, 3 Ann. Cas. 821; Donley v. Glens Falls Ins. Co.

184 N. Y. 107, 76 N. E. 914, 6 Ann. Cas. 81. Further citation of authorities is useless, however, as we have a special statute which we deem controlling and which apparently adopts the rule of the New York and other courts that such a policy is devisable. This statute is § 5909, Rev. Codes 1905, and reads:

"The procurement of any other contract of insurance upon or the encumbrance of one or more of the several distinct things insured by one policy does not render void any insurance upon the things not covered by such other contract of insurance or encumbrance; but in case of loss or damage such an amount shall be deducted from the insurance as the value of the property so encumbered or doubly insured bears to the value of all the property covered by the policy. Any agreement made to waive the provisions of this or the preceding section is void."

We are unable to concur in the construction of this section contended for by appellant's counsel. The language therein employed must be given its ordinary meaning, and not a technical meaning known only to insurance experts. As thus construed the policy must be treated as two separate and distinct policies, one on the building and the other on the personal property and fixtures; and a breach of conditions subsequent which renders the insurance void as to one does not affect the other.

There is, however, as we view the record, an unsurmountable obstacle in the way of plaintiff's recovery for the personal property loss. The record discloses the following undisputed facts: One Torbenson, the cashier of the plaintiff bank, was the only director or representative of the bank who was present at the time of the fire. A fire broke out in the building on lot 8 of block 2, and plaintiff's bank building was on lot 1 in such block, about 175 feet away. The fire which started on lot 8 is not the same fire that burned the bank, although Torbenson, in effect, so stated in his own proof of loss. The bank building was set on fire, with the consent of Torbenson, some thirty to forty-five minutes after the discovery or alarm of fire was given, for the purpose of checking the first fire and preventing it from spreading west and across the street to the Hanson store. After the fire was started in the bank building, Torbenson interfered with a person who was in the act of putting it out. With the question of the wisdom or propriety of setting the bank building afire for the purpose aforesaid, we are not

concerned further than the legal bearing it may have on the right to re-cover for the personal property therein destroyed. The evidence dis-closes that the bank building was set on fire and entirely consumed! prior to the time the other fire reached the implement building, 28 feet east of such bank. For the purpose of burning the bank several per-sons carried pails of kerosene oil from the Hanson store and saturated the interior of the building therewith. Numerous persons were pres-ent, including Torbenson, for considerable time before this took place, but no effort apparently was made to save any of the personal property, except as hereinafter stated. Under the undisputed facts it is unbeliev-able that, with the exercise of but little diligence, the entire contents of the building could not have been saved. When asked on the trial what, of the contents, he removed from the bank, Torbenson testified: "Well, there wasn't much stuff taken out, but there was some put in the vault."

Q. What, if any, property did you take from the bank building out in the street or to a place of safety?

A. I think there was a check sorter,  . . .

Q. What else did you take out?

A. Just as I got out it was getting pretty smoky, and right around the corner of the door I took the telephone.

Q. That is all you took out of the bank?

A. Yes, sir, that is all.

Q. I think you told the jury that you had a roll-top desk and bank counter, and lamps and cuspidors, supplies, and books in that bank?

A. Yes, sir.

Q. Those you didn't take out?

A. No, sir.

Q. Now you were possessed at the time of the fire in the bank of a typewriter?

A. Yes, sir.

Q. How many?

A. Two.

Q. One you placed in the vault, you say?

A. Yes, sir.

Q. Did you get the other one out?

A. No, sir.

Q. Left that in—the bank owned them both?

A. No, Mr. Gilland owned one of them.

Q. Which one did he own?

A. The one in the vault. The typewriter belonging to the bank was not removed from the banking room; the adding machine was in the vault when we closed that night.

Q. I wish you would tell the jury, Mr. Torbenson, just what stuff you put into the vault after you discovered the fire in the block.

A. Well, there was that check protector and insurance blanks and some legal blanks and other small things I could throw in easily.

Q. Then you opened the vault door to put these legal blanks in?

A. I didn't put many legal blanks in, because it was getting smoky and I didn't have much time. I opened the vault door to put the legal blanks in. I didn't go into the bank and open the vault door until they started to set the bank on fire.

Q. Now, you have told the jury, have you Mr. Torbenson, all of the personal property that you removed from that banking room that night, either by placing it in the vault or by taking it out on the street?

A. I couldn't say as to that.

Q. Well, all that you recall?

A. Well, I recall there was a pistol in there that was taken out.

Q. . . . . What else did you take out?

A. -There was a draft holder; I put that in the vault; that was a sort of box to keep the drafts in; it was a piece of tin; I cannot recall anything else.

This witness enumerated the property which was destroyed as a typewriter, roll-top desk, bedroom set, insurance cabinet, stand, desk, typewriter desk, stamps, check counter, six chairs, 2 office chairs, cuspidors, waste baskets, 2 stoves, check desk, 2 oil lamps, gasolene lamp, supplies, stamps, envelopes, and books, rubber stamp and holders, inkstand, legal blanks, carpet, maps, lawn mower, flat-top desk, and some small things not enumerated. When we consider that the fire did not break out in the bank building, but in a building about 175 feet therefrom, and that there were four buildings and a vacant lot between the bank and the place where the fire started, and when we also consider that the bank building was deliberately set on fire as the result of a consultation be-

tween Torbenson and several other citizens, we cannot help but feel that we were justified in our conclusion in the first opinion that no effort was made to save this personal property, and that there was ample time and opportunity to do so. The case at bar in this respect widely differs from Wolters v. Western Assur. Co. 95 Wis. 265, 70 N. W. 62, relied on by respondent's counsel. There the fire started in the building where the personal property was contained, and, furthermore, the opinion discloses that there was a sharp conflict in the testimony as to the efforts made to save the personal property, at least such a conflict as required the submission of the question to the jury, while in the case at bar no such conflict exists. In German-American Ins. Co. v. Brown, 75 Ark. 251, 87 S. W. 135, also cited by respondent's counsel, the court said: "There was a conflict in the testimony as to whether or not some of the property could not have been saved by the bystanders, but none that either of the insured could have done so. The testimony introduced by appellants showed affirmatively that Brown did not reach the scene of fire until too late to have saved any of the property; and that McKibben was suffocated and in a helpless condition, and unable for that reason to save any of the property." The case cannot be said to be in any respect in point under the facts in the case at bar.

The policy contains a stipulation that the "company shall not be liable for loss caused directly or indirectly . . . by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire, or when the property is endangered by fire in neighboring premises." If it be conceded (which we do not decide) that the company may be held liable for the loss of a building where it is intentionally burned for the protection of other property, still it would seem plain that at least reasonable care should be exacted in order to minimize the loss as much as conditions will fairly permit of. As said in Thornton v. Security Co. 117 Fed. 773: "Every policy holder is bound to do all that he reasonably can, in case of a fire, to preserve and protect the property insured, and cannot therefore hold the company liable for loss which is traceable to a disregard of that duty." To the same effect is Phœnix Ins. Co. v. Mills, 77 Ill. App. 546. The contention of respondent's counsel that by the terms of the above stipulation the company is exonerated from liability only to the extent of loss caused by the failure of the insured to use all reasonable means to save the

property is no doubt correct, but, as before stated, the proof conclusively shows that all the personal property might have been saved by the use of even slight diligence on Torbenson's part. His conduct evinces a most flagrant and reckless disregard of the rights of the company, amounting to bad faith, if not actual fraud; and if the plaintiff bank is responsible for his acts in failing to exercise diligence to save his property, then clearly no liability on defendant's part exists. That plaintiff is thus responsible for Torbenson's conduct, we entertain no doubt. He was the sole representative of the bank present, and in effect he was the bank to all intents and purposes. If respondent's contention be sound on this phase of the case, such stipulation in a policy issued to a corporation would be utterly useless. Nor does § 5973, Rev. Codes, support respondent's contention on this point. That section, as we construe it, has reference to the original cause of the fire, and distinguishes between loss resulting from a wilful setting of the fire and one resulting from a fire caused through mere negligence of the insured or his agents or others. If the section applies here, then manifestly the grossest negligence of the insured, when a natural person, in failing to preserve the property at or after a fire, would not exonerate the company from liability, and such stipulations in our standard policies would therefore be nugatory. Clearly, such could not have been the legislative intent.

Judgment reversed, and the district court is directed to dismiss the action.