**AGRA–BY–PRODUCTS, INC., a corporation, Plaintiff and Appellant,**

v.

**AGWAY, INC., a corporation, Ray Wilson and Lee Leines, Defendants and Appellees.**

**Civ. No. 10541.**

Supreme Court of North Dakota.

March 29, 1984.

Stefanson, Landberg, & Alm, Moorhead, Minn., and Lamb, Schaefer, McNair & Larson, Fargo, for plaintiff and appellant; argued by Michael D. McNair, Fargo, and Dennis Bitz, Bismarck.

Gjevre, McLarnan, Hannaher, Vaa, Skatvold & McLarnan, Moorhead, Minn., for defendants and appellees; argued by Timothy J. McLarnan, Moorhead, Minn.

ERICKSTAD, Chief Justice.

This is an appeal from a judgment entered by the District Court of Cass County on August 2, 1983, dismissing the complaint of the plaintiff, Agra-By-Products, Inc., [Agra], pursuant to the district court's order granting a motion for summary judgment in favor of the defendants, Agway, Inc., and its employees Ray Wilson and Lee Leines [Agway]. We affirm in part, reverse in part, and remand for trial.

Traill County Storage, Inc., a North Dakota corporation, and Agway entered into a written lease on June 22, 1979, wherein it

was agreed that Traill County Storage would lease to Agway a twenty-acre test plot site, iron-clad flat storage warehouse, and cribbed elevator structure located in Traill County. Pertinent provisions of the lease read as follows:

"5. That the parties hereto agree that the insurance provisions in full force and effect as shown by the policy of insurance attached hereto and made a part hereof by reference as Exhibit I shall continue unless otherwise agreed upon by the parties in writing, so long as this lease is in effect. That the LESSEE herein agrees to reimburse LESSOR for all insurance premiums of any nature of kind paid by the LESSOR for said insurance on the buildings which are the subject of this lease.

\* \* \* \* \* \*

"7. Further, the party of the second part, LESSEE, does hereby further agree to maintain the leased buildings and equipment, together with the service and access roads in as good condition as they now are, excepting normal wear and tear by the elements alone. Further, the party of the second part, LESSEE, agrees that all normal, usual and ordinary maintenance and repair of the premises ... shall be the responsibility of the LESSEE.

\* \* \* \* \* \*

"10. ... [LESSEE] will, at the expiration of the time as herein recited, quietly yield and surrender the aforesaid premises to the said party of the first part, LESSOR, his heirs and assigns, in as good condition and repair as when it took

them excepting normal wear and tear as set out in Paragraph 7 above that the party of the second part, LESSEE, shall make any and all necessary repairs and maintenance on the premises during the term of this lease...."

Three previous leases dated January 31, 1972, June 6, 1975, and May 23, 1977, were entered into by the parties. These leases, superseded by the lease dated June 22, 1979, also covered the warehouse and elevator and included provisions similar or identical to paragraph 5 of the lease dated June 22, 1979.

■ On May 2, 1980, a fire destroyed or materially damaged the buildings under lease to Agway and other property. Agra, having "merged and consolidated" with Traill County Storage, commenced a lawsuit against Agway by service of summons and complaint on February 1, 1982, to recover its insurer's subrogation claims and its own uninsured loss resulting from the fire.[1] Agra alleged in its complaint that the negligence of Agway constituted a proximate cause of the fire and asked that judgment be entered in its favor against Agway for $1,500,000 plus interest, costs, and disbursements.[2] In its answer, Agway denied the allegations set forth in Agra's complaint and moved that the complaint be dismissed on grounds it failed to state a claim upon which relief could be granted. Agway alleged that Agra's cause of action was barred by provisions in the parties' lease.

Agway filed a counterclaim on March 5, 1982, alleging the fire occurred because of negligence on the part of Agra in leasing

---

1. Rule 17(a), N.D.R.Civ.P., which requires that every action be prosecuted in the name of the real party in interest, is complied with where an action is brought against a tort-feasor in the name of an insured who has been paid by an insurer for only a portion of his loss. *Vantine Paint & Glass Company of Dickinson, Inc. v. Kudrna,* 194 N.W.2d 760 (N.D.1972); *Regent Cooperative Equity Exchange v. Johnston's Fuel Liners, Inc.,* 122 N.W.2d 151 (N.D.1963).

2. Agra alleged that it sustained the following damage as a result of the fire:

"[T]otal and partial losses to property ..., including a grain elevator, a ... galvanized steel building utilized as a warehouse, sunflower hulls, fences, feedbunks, cattle self-feeders, a granary, granary contents, electrical equipment, a grain dryer, feedlot watering system, a concrete slab, crops, bridge planks and telephone poles, and other numerous special and general damages, incidental and consequential damages including loss of earnings, interest expenses, clean up expenses, supervisory expenses, equipment rental expenses, and other damages including loss of rental income."

defective buildings and equipment and in negligently maintaining and inspecting the leased property. Agway alleged that it suffered damage to personal property as a result of Agra's negligence in the amount of $500,000.[3]

Agway thereafter filed a motion to dismiss Agra's complaint on grounds it failed to state a claim upon which relief could be granted and because there was no genuine issue as to any material fact pursuant to Rules 12(b)(5) and 56(c), N.D.R.Civ.P. Affidavits in opposition to the motion were filed by J. Paul Gunkleman, Agra's President, and Raymond A. Lamb, a former shareholder and Director of Traill County Storage. These affidavits assert in part that it was never the intention of Agra to exonerate Agway from liability for its own negligence, that all parties knew that the leased premises were inadequately insured, that Agway had obtained its own insurance coverage on the leased premises, and that Agway would not reimburse Agra for any and all insurance Agra wished to carry on the leased premises. Fredrick Alm, an attorney for Agra, asserts in an opposing affidavit that he received a letter dated April 28, 1981, from the claims manager of Agway suggesting that the parties agree to a mutual waiver of their subrogation rights. A supporting affidavit submitted by James Krogh, Sunflower Department Manager for Agway and custodian of Agway's records relating to the leased property, includes assertions that Agway paid the premiums on the fire insurance policies referred to in the lease and that Agway had no separate fire insurance policy protecting its leasehold interest.

On June 3, 1983, Agra moved the district court for an order to amend its complaint to allege that Agway's conduct constituted gross negligence.

An affidavit filed June 9, 1983, by Duane Ilvedson on behalf of the AID Insurance Company includes the assertion that the AID Insurance Company has a $35,000 subrogation interest in certain property destroyed or damaged in the fire which was not subject to the parties' lease agreement.[4]

On July 20, 1983, the district court issued its memorandum opinion and order granting Agway's motion for summary judgment and dismissing Agra's complaint. The court found that the terms of the parties' written lease were clear and unambiguous as a matter of law and therefore refused to consider extrinsic evidence offered to prove the intent of the parties. The court determined that it was "obvious from reading the whole lease," that the provision for insurance was for the benefit and protection of both parties and therefore Agway was an insured. The court also determined that the absence of a waiver of subrogation clause or other provision in the lease specifically absolving Agway from liability for its own negligence did not mean the parties intended that Agway be liable in such a case. The court concluded that the terms of the lease precluded any recovery by Agra from Agway. It was also concluded that the insurance companies could not recover from Agway because an insurer, as a matter of law, cannot recover from its own insured. Agra's motion to amend its complaint to allege gross negligence was denied.

Agra contends that the lease is ambiguous as to whether or not Agway is responsible for its negligence and that this ambiguity results in a genuine issue of material fact so as to preclude entry of summary judgment. In accordance with this contention, Agra raises the following issues:

 I. Did the district court err in its interpretation of the parties' written

---

3. Agway also caused a third-party summons and complaint to be served upon Traill County Storage, Inc., for its failure to include a waiver of subrogation clause in the lease agreement. The third-party complaint was dismissed without prejudice pursuant to the terms of a settlement agreement reached by the parties.

4. AID Insurance Company asserts that it has a subrogation interest in the following non-leased property destroyed or damaged in the fire: sunflower hulls (4,165,420 lbs.), various fences, bunkers, hay feeders, self-feeders, granaries, lighting system, and planking.

lease, specifically paragraph 5 thereof, by construing it to relieve Agway from liability for fire damage caused by its alleged negligence?

II. Does the lease relieve Agway from liability for fire damage caused by its alleged gross negligence?

III. Does the lease relieve Agway from liability for fire damage in excess of the limits of the fire insurance policy covering the leased premises?

IV. Does the lease relieve Agway from liability for fire damage to property not subject to the lease or policy of insurance made a part of the lease?

The district court, in granting Agway's motion for summary judgment, made no distinction between the various subrogation claims and Agra's alleged uninsured loss, nor did it distinguish between the leased and non-leased property destroyed or damaged in the fire. Our standards for reviewing an appeal from a summary judgment were recently set forth in *Hastings Pork v. Johanneson*, 335 N.W.2d 802, 805 (N.D. 1983):

"Summary judgment will be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. *Keller v. Hummel*, 334 N.W.2d 200 (N.D. 1983); Rule 56(c), NDRCivP. On appeal from a summary judgment, this court must view the evidence in a light most favorable to the party against whom the summary judgment was granted and we may only determine if a genuine issue of fact exists and if the law was applied correctly. *Benson Cty. Co-op., Etc. v. Central Livestock*, 300 N.W.2d 236 (N.D. 1980). Summary judgment is not appropriate if it appears from the record that there is an unresolved issue of material fact. Nor is summary judgment appropriate if the moving party is not entitled

to judgment as a matter of law, or if reasonable differences of opinion exist as to the inference to be drawn from undisputed facts. *Keller v. Hummel, supra.*"

 A lease is subject to the general rules of contract construction. *Weiss v. Anderson*, 341 N.W.2d 367, 369 (N.D.1983). We have often said that the construction of a written contract to determine its legal effect is a question of law for the court to decide. *See Hastings Pork v. Johanneson, supra*, 335 N.W.2d at 806; *Metcalf v. Security International Insurance Company*, 261 N.W.2d 795, 799 (N.D.1978). The object of interpreting and construing a contract is to give effect to the mutual intention of the parties as it existed at the time of contracting. Section 9–07–03, N.D.C.C.; *Metcalf v. Security International Ins. Co., supra*. As the lease is reduced to writing, we must ascertain the intention of the parties from the writing alone, if possible. Section 9–07–04, N.D.C.C.; *Hastings Pork, supra*.

I.

There is no provision in the parties' lease which expressly absolves Agway from tort liability for a fire resulting from its negligence. Agway contends that such a result can be inferred from paragraph 5 of the lease. It argues that its obligation under the lease to reimburse Agra for insurance premiums paid by Agra for the purpose of continuing to insure the leased premises under a policy of insurance attached to and made a part of the lease reveals the parties' intent to insure the premises for their mutual benefit and protection.

We are referred by the parties to decisions of other jurisdictions which comprise the "trend of modern case law ... to relieve the lessee from liability for fire damage caused by his own negligence where the circumstances lead the court to conclude the parties intended such a result." *Rizzuto v. Morris*, 22 Wash.App. 951, 592 P.2d 688, 690 (1979). A brief summary of these cases is included in *Alaska Insurance Company v. RCA Alaska Communi-*

*cations, Inc.,* 623 P.2d 1216, 1218 (Alaska 1981):

"In recent years a number of courts have denied a cause of action to landlords and the right of subrogation to their insurers, when the landlord covenants to carry fire insurance on the leased premises, and the fire damage is allegedly due to the negligence of the tenant. [*Liberty Mutual Fire Insurance Company v. Auto Spring Supply Company,* 59 Cal.App.3d 860, 131 Cal.Rptr. 211, 214–15 (1976); *Cerny-Pickas & Company v. C.R. Jahn Company,* 7 Ill.2d 393, 131 N.E.2d 100, 103–04 (1956); *New Hampshire Insurance Company v. Fox Midwest Theatres, Inc.,* 203 Kan. 720, 457 P.2d 133, 140–41 (1969); *Rock Springs Realty, Inc. v. Waid,* 392 S.W.2d 270, 278 (Mo. 1965); *United States Fire Ins. Co. v. Phil-Mar Corporation,* 166 Ohio St. 85, 139 N.E.2d 330, 333 (1956); *Sutton v. Jondahl,* 532 P.2d 478, 482 (Okla.App. 1975); *Monterey Corporation v. Hart,* 216 Va. 843, 224 S.E.2d 142, 146–47 (1976); *Rizzuto v. Morris,* 22 Wash.App. 951, 592 P.2d 688, 690–91 (1979). *See also General Mills, Inc. v. Goldman,* 184 F.2d 359, 365 (8th Cir.1950), *cert. denied,* 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683 (1951); *Gordon v. J.C. Penney Company,* 7 Cal.App.3d 280, 86 Cal.Rptr. 604, 606 (1970); *Hardware Mutual Casualty Company v. Bob White Oldsmobile-Cadillac, Inc.,* 46 Ill.App.3d 722, 5 Ill.Dec. 186, 188, 361 N.E.2d 325, 327 (1977).] Absent an express provision in the lease establishing the tenant's liability for loss from negligently started fires, the trend has been to find that the insurance obtained was for the mutual benefit of both parties, and that the tenant 'stands in the shoes of the insured landlord for the limited purpose of defeating a subrogation claim.'" [Quoting *Rizzuto, supra,* 592 P.2d at 690.]

*See also Page v. Scott,* 263 Ark. 684, 567 S.W.2d 101 (1979); *Fred A. Chapin Lumber Company v. Lumber Bargains, Inc.,* 189 Cal.App.2d 613, 11 Cal.Rptr. 634 (1961); *West American Insurance Company v. Pic Way Shoes of Central Michigan, Inc.,* 110 Mich.App. 684, 313 N.W.2d 187 (1981); *Mayfair Fabrics v. Henley,* 97 N.J.Super. 116, 234 A.2d 503 (1967). *But see Sears, Roebuck And Company v. Poling,* 248 Iowa 582, 81 N.W.2d 462 (1957); *Poslosky v. Firestone Tire And Rubber Company,* 349 S.W.2d 847 (Mo.1961); *Wichita City Lines, Inc. v. Puckett,* 156 Tex. 456, 295 S.W.2d 894 (1956).

A majority of the cases cited by the parties construe lease agreements which also include, and upon which is placed considerable emphasis, a provision obligating the lessee to surrender the leased premises at the end of the lease in the same condition as when acquired with exception for loss by fire.[5] Illustrative is *Cerny-Pickas & Company v. C.R. Jahn Company,* 7 Ill.2d 393, 131 N.E.2d 100 (1956). In *Cerny-Pickas* the lessor and insurance company brought an action to recover damages from the lessee for negligence which resulted in the fire loss of the lessor's building, machinery, and equipment. Under the lease, the lessor was required to pay for fire insurance on the leased property and the lessee was to "yield up said premises to Lessor in good condition and repair (loss by fire and ordinary wear excepted)" at the end of the lease. In ruling for the lessee, the Supreme Court of Illinois said:

"The argument most strongly urged against exoneration of the lessee is that the lease does not in so many words provide that the lessee be free from liability for fires resulting from its own negligence. Of course, if the lease contained such an express provision, that would be the end of the matter. But because the contingency was not covered by express language, it does not follow that the instrument may not, when all of its provisions are considered, show that the parties themselves intended that the lessee should not be liable. That deter-

---

**5.** *See generally* Annot., *Validity, Construction, and Effect of Provision of Lease Exempting Landlord or Tenant From Liability on Account of Fire,* 15 A.L.R.3d 786, § 7 (1967 & Supp. 1983).

mination is to be made upon a consideration of the instrument as a whole." 131 N.E.2d at 102–03.

The court found that the parties contemplated the contingency that the leased property might be damaged or destroyed by fire. First considered was the language of the surrender clause, excepting loss by fire:

"In the absence of any contrary expression in the lease, the lessee is not liable to the lessor for damages to the premises from fire which is not the result of his own negligence.... Therefore, unless this clause of the lease exempts the lessee from liability for loss by fire resulting from his own negligence, it does no more than restate the lessee's common-law obligation." 131 N.E.2d at 103.

In reaching its conclusion, the court also placed emphasis on the lessor's obligation under the lease to pay for fire insurance:

"Under the construction urged by the lessor it would be necessary for both parties to the lease to carry fire insurance if they are to be protected. The lessee would have to insure against fires due to his negligence, and the lessor against fires due to other causes.... In the present lease the lessor agree[d] ... to pay for fire insurance upon the leased building, equipment and machinery. The parties contemplated that the risk of loss by fire should be insured against and we see no reason to suppose that they did not contemplate the customary insurance policy which covers both accidental and negligent fires.... From the lease as a whole we conclude that the lessee was not to be liable for loss by fire regardless of the cause of the fire, and that the parties intended that the lessor should look solely to insurance as compensation for damage caused by any kind of fire." 131 N.E.2d at 103.

In *Liberty Mutual Fire Insurance Company v. Auto Spring Supply Company*, 59 Cal.App.3d 860, 131 Cal.Rptr. 211 (1976), an insurance company, Liberty, brought a subrogation action against a sublessee of the named insured, the lessor, for fire damage to a leased building. Under the lease, the lessee was required to take out and maintain fire insurance on the building at its own expense " 'with loss payable to the lessor.' " A portion of the rent payable by the sublessee under the sublease covered the premium on the fire insurance policy carried by the lessee under the terms of the lease with the lessor. Under both the lease and sublease the proceeds of the insurance policy were to be used to repair fire damage. In ruling that the insurance company, as a matter of law, was not entitled to judgment, the court said:

"It is quite obvious from these provisions that the parties to the lease and the sublease all intended that the proceeds of [the] fire insurance policy, maintained by the lessee at [the sublessee's] expense, were to constitute the protection of all parties to the lease documents against fire loss to the extent of the policy limits. This was the commercial expectation of these parties....

"If subrogation were permitted here, [the sublessee], rather than the proceeds of Liberty's policy, would become the source of the funds used to repair the fire damage.... [I]t would be most inequitable to hold [the sublessee] responsible for a fire loss which it thought it had completely avoided through its indirect payment over some nine years of the premiums due on Liberty's policy and had also acted in reliance upon this belief by failing to take out corresponding fire insurance of its own. It would also be a windfall for Liberty to have collected these premiums over the years for its assumption of this risk and then when the risk actually occurred, by means of this litigation, to transfer the risk wholly to [the sublessee]—the entity which paid Liberty's premiums for years to avoid this very risk.

"Whenever a building is leased or subleased for business purposes, it is customary to require in the various lease and sublease documents executed between the parties that some party to the lease or sublease provide protection from fire damage to the building and a source

of funds for the alleviation of that damage by obtaining and maintaining adequate fire insurance on the building. Such a provision is for the implied benefit of all persons either owning or making primary use of the building. To construe otherwise, the scope of the protection so provided would be both unrealistic and unfair." 131 Cal.Rptr. at 214–15. The court also did not "deem of decisive consequence the fact that both the lease and the sublease ... [lacked] any implied exemption of [the sublessee] from liability for fire loss to [the lessor]."

None of the cases cited by either party construe a lease containing a provision requiring the lessee to reimburse the lessor for premiums paid by the lessor for a policy of insurance attached to and made a part of the lease. The cases are useful, however, in that they illustrate that the essential point is to ascertain the parties' true intent by reading and construing the lease as a whole. "[E]very case like the present one must be decided on its own facts and on the actual terms of the lease." *Rock Springs Realty, Inc. v. Waid, supra,* 392 S.W.2d at 274. The cases also illustrate that a mutual understanding that insurance is provided for the mutual protection of the parties may be implied from provisions of the parties' lease.

Agra argues that paragraph 5 of the lease, in the absence of a surrender clause excepting loss by fire, a waiver of subrogation clause or other clause specifying the effect of loss due to fire, coupled with the absence of a provision specifying that the insurance obtained should also benefit the lessee, gives rise to a dispute as to whether or not the parties intended that Agway be absolved from liability for a fire caused by its negligence. Agra contends the lease is ambiguous in this regard. It argues that the affidavits in opposition to Agway's motion to dismiss establish that Agway requested a mutual waiver of subrogation rights with Agra; that although Agway reimbursed Agra for insurance, the leased premises were not adequately insured because Agway was unwilling to reimburse

Agra for premiums to procure additional insurance; and that Agway never requested that Agra include Agway as a named insured under the fire insurance policy. These facts, Agra contends, reveal the true intent of the parties and also establish that the lease is ambiguous.

It is well-settled that extrinsic evidence, such as the supporting and opposing affidavits filed in this case, is to be considered only if the language of the contract is ambiguous and the parties' intentions cannot be determined from the writing alone. Section 9–07–02, N.D.C.C.; *Yon v. Great Western Development Corporation,* 340 N.W.2d 43, 46 (N.D.1983). The determination of whether or not the terms of a written contract are clear and unambiguous is a question of law. *Yon v. Great Western Development Corp., supra; Hastings Pork, supra.* Questions as to the parties' intentions which cannot be resolved without the use of extrinsic evidence are questions of fact for the trier of fact. *Yon, supra; Zitzow v. Diederich,* 337 N.W.2d 799, 801 (N.D.1983). If the parties' intentions can be ascertained from the writing alone, without reference to extrinsic evidence, then the interpretation of the contract is entirely a question of law, and this Court will independently examine and construe the contract to determine whether or not the district court erred in its interpretation of it. *Zitzow v. Diederich, supra; Hastings Pork, supra.*

We believe that the parties' intentions are ascertainable from the writing alone.

The parties agreed to continue the insurance provisions in full force and effect as shown by the policy of insurance attached to the lease. Agway agreed to reimburse Agra for premiums paid by Agra for "said insurance" on the buildings subject to the lease. The lease also required Agway to make any and all normal, usual and ordinary maintenance and repair of the leased premises. Section 47–16–10, N.D.C.C., provides that a "lessee of real property must repair all deteriorations or injuries thereto occasioned by his ordinary negligence."

A lessee's insurable interest in property leased may consist, in part, of the right or obligation to make repairs. *Stebane Nash Co. v. Campbellsport Mutual Insurance Co.*, 27 Wis.2d 112, 133 N.W.2d 737, 742–43 (1965). *See* Section 26–02–06, N.D.C.C.; *Burroughs Corporation v. Barry*, 380 F.2d 427, 432 (8th Cir.1967); *Grand Forks Seed Company v. Northland Greyhound Lines, Inc.*, 168 F.Supp. 882, 883, 884 (D.N.D.1959); *Reishus v. Implement Dealers Mutual Insurance Co.*, 118 N.W.2d 673, 682 (1962); Couch on Insurance 2d § 24:60. It is quite clear the parties contemplated that the leased premises might be destroyed or damaged by fire or some other peril and made provision for such a contingency by agreeing to continue to insure the leased premises. Clearly the parties intended to shift at least a portion of their risk of loss to an insurance company in return for premium payments, irrespective of negligence. To construe paragraph 5 of the lease as merely providing for reimbursement by Agway for insurance premiums paid by Agra and nothing more would place an undue hardship on Agway and ignores that the policy of insurance was to be attached to and expressly made a part of the lease. We find that paragraph 5 of the lease is a clear indication of the parties' intent to provide for the mutual protection of their insurable interests in the leased property. We can envision no other reason for such a provision. This interpretation is not inconsistent with any other provisions of the lease.

Agra contends that Agway's conduct in placing a limit upon what it would pay Agra for insurance premiums, as alleged by the affidavit and deposition testimony of J. Paul Gunkelman, and in procuring its own insurance covering the leased premises, as alleged by the affidavit of Raymond Lamb, evidences a modification of the lease and raises a genuine issue of fact so as to preclude entry of summary judgment.[6] Agra does not specifically assert to what extent this alleged conduct alters the parties' lease. The district court concluded that these allegations were immaterial and did not add or detract from the terms of the written lease.

Agway argues that Gunkelman's deposition testimony relates to Agway's refusal to pay a greater premium during the renegotiation of the prior lease dated June 6, 1975. We agree that the deposition testimony of Gunkelman concerning the allegation that Agway placed a limit upon what it would pay Agra for insurance premiums was made in reference to the renegotiation of a prior lease now superseded by the lease dated June 22, 1979. A letter to Lamb from Agway containing a liability insurance certificate relied upon by Lamb as an indication that Agway had procured its own insurance covering the leased premises is dated February 9, 1976. Agway argues that this evidence actually reveals that no modification of the lease of June 22, 1979, occurred. We agree. Agra's allegations do not show that there is a genuine factual issue for trial concerning whether or not the lease dated June 22, 1979, was modified by the parties pursuant to Section 9–09–06, N.D.C.C.

We therefore construe the lease to protect Agway from subrogation claims arising from the insurance provisions in force and effect as shown by policy or policies of insurance made a part of the lease, regardless of whether or not Agway was negligent in causing the fire. Agra argues that this result jeopardizes most of the insurance industry by exposing insurers to unknown risks. We do not agree. "Insurance companies expect to pay their insureds for negligently caused fire, and they adjust their rates accordingly." *Rizzuto, supra.*

## II.

Agra contends there was clearly no intent to absolve Agway from liability

---

**6.** Section 9–09–06, N.D.C.C., which sets forth requirements for the alteration of a written contract, reads as follows:

"A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise. An oral agreement is executed within the meaning of this section whenever the party performing has incurred a detriment which he was not obligated by the original contract to incur."

for a fire loss caused by Agway's gross negligence and directs our attention to 15 A.L.R.3d 786, § 8, for the proposition that such distinctions in the degree of culpability have been recognized by other courts in similar cases. The cases cited in the annotation involve the question whether or not a fire exemption provision in a lease absolves the landlord or tenant from liability for loss due to fire on account of his willful or wanton conduct. *See Thomas v. Atlantic Coast Line R. Co.*, 201 F.2d 167 (5th Cir.1953); *Columbia Ins. Co. v. Texas & P. Ry. Co.*, 74 F.Supp. 714 (W.D.La.1947); *Englehardt v. Triple X Chemical Laboratories, Inc.*, 53 Ill.App.3d 926, 11 Ill.Dec. 613, 369 N.E.2d 67 (1977); *Bishop v. Associated Transport, Inc.*, 46 Tenn.App. 644, 332 S.W.2d 696 (1959). We have reviewed the cases cited and find them distinguishable. The conclusion reached in each of the cases rests on the court's interpretation of a lease provision exempting a party to the lease from liability for fire damage.

In the instant case, *we are not directed to provisions of the lease or to provisions in any policy of insurance* from which it could be inferred that the insurance coverage obtained by the parties for their mutual benefit and protection was not intended to cover loss by fire caused by the gross negligence of Agway. "An insurer is not liable for a loss caused by the willful act of the insured, but he is not exonerated by the negligence of the insured or of his agents or others." Section 26–06–04, N.D.C.C. In an early case, this Court implied that even the "grossest negligence of the insured" could not be equated with willful conduct under the identical statutory predecessor to Section 26–06–04. *See First Nat. Bank of Nome v. German American Ins. Co.*, 23 N.D. 139, 134 N.W. 873, 879 (1912). We have previously defined gross negligence *in a general sense* as "practically willful in its nature." *See Sheets v. Pendergrast*, 106 N.W.2d 1, 5 (N.D.1960). *However,*

*gross negligence is not "willful" as a matter of law.* *Wysoski v. Collette*, 126 N.W.2d 896, 898 (N.D.1964). We conclude therefore that Agra suffered no prejudice from the trial court's refusal to permit Agra to amend its complaint to include the allegation of gross negligence.

### III.

▉ Agway contends that the exonerating effect of its status as a co-insured also extends to Agra's uninsured loss. It is argued that Agra had full control over the type and amount of insurance to be obtained and that Agra's failure to procure adequate insurance to cover the full value of the leased premises is a cost it will have to bear.

Looking to the lease, we find no agreement as to the procurement and maintenance of a specified level of insurance. Agway agreed to reimburse Agra for "all insurance premiums of any nature of kind paid by [Agra] for said insurance on the buildings" subject to the lease; "said insurance" referring to the insurance provisions in full force and effect as shown by the policy of insurance attached to the lease. Agra did not agree "to insure the premises against loss by fire to the extent of the fair insurable value thereof." *See City of Deland v. Dri-Clime Lamp Corp.*, 348 So.2d 1239, 1242 (Fla.App.1977). The terms of the lease cannot be construed to absolve Agway from liability for its negligence in causing Agra's uninsured loss. We conclude that Agway is limited in its protection under the lease to the extent of insurance coverage provided for by "the insurance provisions in full force and effect as shown by policy of insurance attached [to] and made a part [of the lease]." We construe this provision to include all insurance, in effect at the time of the fire, purchased by Agra on the leased property during the term of the lease with Agway.[7]

---

7. The record does not disclose policies physically attached to the lease. Attached to the affidavit of James Krogh are copies of various insurance policy declaration sheets in the possession of Agway; however, it is asserted that Agway

does not have copies of all the insurance policies in effect at the time of the fire. The following information is attached to the affidavit as described by Krogh: (1) "[D]eclaration sheets from four insurance policies in effect in 1975

## IV.

Nor do we construe the lease so as to absolve Agway from liability for damage caused by its negligence to buildings or other property not subject to the lease. Agway argues that it was foreseeable that if a fire broke out it could spread to adjacent buildings or equipment, leased or non-leased, and that the insurance coverage provided by paragraph 5 of the lease was intended to provide the sole source of compensation for any and all fire losses. We do not construe the lease so broadly. There is no provision in the lease that has any application to non-leased property. Such property is beyond the terms of the lease. *See Sannit v. Aarons,* 297 F.Supp. 798, 800 (D.Del.1969).

We hold, as a matter of law, that the provisions of the parties' lease absolve Agway from liability to Agra for fire damage caused by Agway's negligence to property subject to the lease, but only to the extent of insurance coverage purchased by Agra provided by the insurance policy or policies in force and effect for the property under lease to Agway. The summary judgment of the district court is therefore affirmed in part and reversed in part. We remand this case for trial on the merits of Agra's claims concerning Agway's liability for Agra's alleged uninsured loss and damages to non-leased property. Costs on appeal shall be awarded to the appellant, Agra.

SAND, GIERKE, PEDERSON and VANDE WALLE, JJ., concur.

and 1976. These four declaration sheets collectively are referred to as Exhibit 1 and are the policies referred to in paragraph 5 of the 1979 and earlier versions of the lease," (2) Declaration sheets and endorsements from Capitol Indemnity Corp., Monticello Ins. Co. and National American Ins. Co. all in effect at the time of the fire, and (3) "A copy of a policy from Midland Union Mut. Ins. Co. in effect at the time of the fire." Agra is the named insured on all the policies referred to in the affidavit, which are, to the best of Krogh's information, all standard fire insurance policies.